CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 30 2010

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy Clerk
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THOMAS W. CODER, | ) |
| | ) |
| Petitioner, | ) Civil Action No. 7:09CV00352 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| TERRY O'BRIEN, WARDEN, | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Respondent. | ) |

Thomas W. Coder, a military prisoner proceeding pro se, filed this action as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The action is presently before the court on the respondent's motion to dismiss. For the reasons that follow, the court will grant the respondent's motion.

## Background

Coder is a former active duty member of the United States Army. On September 4, 1987, a general court-martial convicted Coder of conspiracy to commit murder and premeditated murder for the hanging death of a fellow soldier. Coder was dishonorably discharged from the Army and sentenced to a life term of confinement. In affirming his convictions and sentence on direct appeal, the United States Army Court of Military Review summarized the facts as follows:

> The appellant [Coder] decided in March or April of 1987 to kill Private First Class (PFC) Dennis M. Craig. He enlisted the help of another soldier, PV2 Robidoux. On 12 April, the appellant, PV2 Robidoux, and a PFC Adams who had joined the plan, lured the victim to a vineyard and after PFC Adams left the immediate area, appellant and PV2 Robidoux hung PFC Craig. The appellant admitted at trial that when PFC Craig had tried to reach up to loosen the noose, appellant held PFC Craig's hands so that he could not do so. Later, the appellant typed out a suicide note on a piece of paper which the appellant previously had tricked the victim into signing, apparently convincing the victim that it was for some sort of joke.

> The appellant formulated the idea to kill PFC Craig and he enlisted the aid of another soldier to help him do it. Appellant also participated fully in developing a plan and discussed with PV2 Robidoux several ways to do it. Finally, on the night of the murder, appellant's cruel acts ensured the accomplishment of his ultimate goal -- the murder of PFC Dennis M. Craig.

United States v. Coder, 27 M.J. 650, 653 (A.C.M.R. 1988).

Coder was initially incarcerated at the United States Disciplinary Barracks (USDB) at Fort Leavenworth, Kansas. While confined at the USDB, Coder stabbed another inmate with a homemade knife. On October 4, 1993, a general court-martial convicted Coder of assault and possession of a homemade knife, and sentenced him to an additional term of imprisonment of one year.

On May 16, 1995, Coder was transferred from the USDB to the federal prison system, pursuant to an agreement between the Department of the Army and the Federal Bureau of Prisons (BOP).[1] He was initially assigned to the United States Penitentiary in Terra Haute, Indiana. Following transfers to other prisons managed by the BOP, Coder was assigned to the United States Penitentiary in Allenwood, Pennsylvania (USP-Allenwood).

On January 7, 2004, while incarcerated at USP-Allenwood, Coder filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the United States District Court for the

---

[1] The Uniform Code of Military Justice provides that "a sentence of confinement adjudged by a court martial or other military tribunal . . . may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States . . . ." 10 U.S.C. § 858(a). Pursuant to this authority, the Department of the Army and the BOP entered into a memorandum of agreement "establish[ing] the policies and procedures governing the transfer of military prisoners in the custody of [the] Department of the Army to the Federal Bureau of Prisons." (Respondent's Ex. 3 at pg. 1). Under this agreement, the BOP promised to house up to 500 military prisoners for the Army's convenience. The agreement provides that "[t]he Secretaries of the respective Services retain clemency authority for military prisoners in FBOP custody," but that "[p]arole approval for military prisoners in [the] custody of the FBOP rests with the U.S. Parole Commission." (Respondent's Ex. 3 at pg. 3).

Middle District of Pennsylvania. In the petition, Coder alleged that the BOP and the United States Parole Commission (USPC) had violated his due process rights, and the Ex Post Facto Clause of the Constitution, by applying the federal parole guidelines to him, rather than the Department of Defense guidelines for military sentences. The petition was referred to a magistrate judge for review, and on November 12, 2004, the magistrate judge issued a report in which he recommended that the petition be denied. The district court ultimately concurred with the magistrate judge's recommendation and denied the petition on May 31, 2005.

Coder is now incarcerated within this district at United States Penitentiary-Lee (USP-Lee) in Jonesville, Virginia. He filed the instant § 2241 petition on July 31, 2009. In the petition, Coder claims that the Department of the Army, the BOP, and the USPC have violated his due process rights, his rights under the Equal Protection Clause of the Fifth Amendment, and the Ex Post Facto Clause, by applying the federal parole guidelines to him, and by allowing the USPC to maintain parole authority over him. Coder also claims that he has been denied due process in his attempts to obtain clemency. He seeks an order requiring his immediate release from incarceration.

The respondent, Terry O'Brien, Warden of USP-Lee, moved to dismiss the petition on November 12, 2009. O'Brien argues that the court lacks jurisdiction over the petition, that the petition is barred by the doctrine of abuse of the writ, and that the petitioner's claims are without merit. Coder filed a response to the motion on December 29, 2009. The motion is now ripe for review.

## Discussion

### I. Jurisdiction

In moving to dismiss Coder's § 2241 petition, O'Brien first argues that the only proper respondent is the Commandant of the USDB in Fort Leavenworth, Kansas and, thus, that this court lacks jurisdiction over the petition. For the following reasons, however, the court concludes that O'Brien's jurisdictional arguments are without merit.

A petitioner may seek judicial review of the execution of his sentence by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241. See In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); see also 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained"). As the United States Supreme Court explained in 1885, "these provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." Wales v. Whitney, 114 U.S. 564, 574 (1885). Thus, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held." Padilla, 542 U.S. at 434.

In Rumsfeld v. Padilla, the Supreme Court reaffirmed the application of the "immediate custodian rule" for habeas corpus challenges to present physical confinement. The Court noted that it had "never intimated that a habeas petitioner could name someone other than his

immediate physical custodian as respondent simply because the challenged physical custody does not arise out of a criminal conviction." Padilla, 542 U.S. at 438. The Court further emphasized that "identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody.'" Id. In challenges to present physical confinement, the court reaffirmed that "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.'" Id. Stated differently, "the proper respondent is the person responsible for maintaining – not authorizing – the custody of the prisoner." Id. at 440 n.13.

Applying the foregoing case law, the court concludes that O'Brien's jurisdictional challenge is without merit. At its core, Coder's petition seeks to challenge his present physical confinement. While Coder's confinement is unique in that it stems from various military convictions, neither the habeas corpus statute nor Supreme Court case law "makes [any] distinction based on the source of the physical detention." Id. at 437. In the absence of any valid basis for departure from the immediate custodian rule, the court holds that O'Brien, Coder's immediate custodian at USP-Lee, is the proper respondent and that jurisdiction over the petition lies in this district.[2]

---

[2] The court notes that its decision in this regard is consistent with other recent decisions from this district. See, e.g., Goff v. O'Brien, 2009 U.S. Dist. LEXIS 109676 (W.D. Va. Nov. 24, 2009) (Kiser, J.) (holding that O'Brien was the proper respondent to a § 2241 petition filed by a military prisoner housed at USP-Lee); Seay v. O'Brien, 2010 U.S. Dist. LEXIS 21474 (W.D. Va. Mar. 9, 2010) (Turk, J.) (same).

## II. Abuse of the Writ

O'Brien alternatively argues that Coder's petition should be dismissed as an abuse of the writ, either because Coder's claims were raised in his prior § 2241 petition and denied on the merits, or because they could have been raised in the prior petition. For the following reasons, the court concludes that all of Coder's parole-related claims are barred by the abuse of the writ doctrine.

Section 2244(a) of Title 28 states that "[n]o . . . district court shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of [a federal prisoner] if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255." 28 U.S.C. § 2244(a). Although § 2244(a) does not specifically reference proceedings under § 2241, courts have consistently held that the statute bars claims in second or successive § 2241 petitions that were addressed on the merits in previous habeas corpus proceedings. See Queen v. Miner, 530 F.3d 253, 255 (3d Cir. 2008) (noting that § 2244(a), by its terms, applies to any habeas corpus application filed by a person in custody pursuant to a judgment of a United States court); Chambers v. United States, 106 F.3d 472, 475 (2d Cir. 1997) (applying § 2244(a) to dismiss a second or successive § 2241 petition seeking to re-litigate claims that had been asserted and denied in a prior petition); Valona v. United States, 138 F.3d 693, 695 (7th Cir. 1998) (noting that § 2244(a) bars successive petitions under § 2241 "directed to the same issue concerning execution of a sentence"); Mason v. Ozmint, 361 F. App'x 503 (4th Cir. Jan. 22, 2010) (unpublished) (concluding that regardless of whether Mason's petition should have been treated

as a § 2241 or 2254 petition, "the claim he sought to raise was successive, and [was] thus precluded by 28 U.S.C. § 2244(a)").

The filing of a second or successive habeas petition that seeks to raise a claim that could have been litigated in an earlier proceeding is also precluded under the common law doctrine of abuse of the writ. That doctrine "defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." McCleskey v. Zant, 499 U.S. 467, 470 (1991). In McCleskey v. Zant, the Supreme Court outlined the contours of the abuse of the writ doctrine. The Court held that the respondent bears the initial burden of pleading abuse of the writ, and that if the respondent meets this burden, the petitioner must show cause and prejudice or a fundamental miscarriage of justice to excuse his failure to raise the claim in an earlier petition. McCleskey, 499 U.S. at 494-495. The Court also made clear that "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice [or from inexcusable neglect]." Id. at 489.

In this case, Coder first claims that the Department of the Army, the BOP, and the USPC have violated his due process rights, his rights under the Equal Protection Clause of the Fifth Amendment, and the Ex Post Facto Clause, by applying the federal parole guidelines to him and by allowing the USPC to maintain parole authority over him. Coder raised the same due process and ex post facto arguments in the § 2241 petition that was previously filed in the United States District Court for the Middle District of Pennsylvania. To the extent Coder alleged that he was not properly subject to the jurisdiction of the USPC, the district court explained that military prisoners may be transferred to the BOP pursuant to 10 U.S.C. § 858(a), and that § 858(a)

7

specifically mandates that military prisoners who are transferred to BOP custody "are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State . . . in which the institution is situated." 10 U.S.C. § 858(a). As the district court noted, "this statute has been interpreted to mean that military prisoners in BOP facilities are properly governed by BOP rules, including the rules and guidelines pertaining to parole consideration." Coder v. Pugh, Civil Action No. 1:04CV00019 (M.D. Pa. May 31, 2005) (citing Artis v. U.S. Dep't of Justice, 166 F. Supp. 2d 126 (D. N.J. 2001); Romey v. Vanyur, 9 F. Supp. 2d 565 (E.D. N.C. 1998), aff'd, 168 F.3d 483 (4th Cir. 1999)). As for Coder's claim that his rights to due process were violated as a result of being subject to BOP and USPC regulations, as opposed to military parole rules, the district court held that the claim was without merit, since military prisoners have no protected liberty interest in parole. Coder v. Pugh, supra (citing Artis, 166 F. Supp. 2d at 131). The district court also rejected Coder's ex post facto argument, emphasizing that the application of the USPC guidelines did not result in an increase in the punishment that Coder received. Id. ("The key question in determining whether a law violates the Ex Post Facto Clause is whether the law 'alters the definition of criminal conduct or increases the penalty by which the crime is punishable.'") (quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n.3 (1995)).

To the extent Coder asserts the same due process and ex post facto claims in the instant petition, such claims are clearly barred as an abuse of the writ under § 2244(a). To the extent Coder asserts new claims associated with the application of the federal parole guidelines, such as an equal protection claim, the court agrees with the respondent that such claims could have been raised in his prior habeas petition. Because Coder has failed to show cause for his failure to

8

previously assert those claims, they are also subject to dismissal as an abuse of the writ. See McCleskey, supra.

### III. Clemency Claims

In addition to his arguments pertaining to the application of the federal parole guidelines, Coder claims that he has been denied due process in his attempts to obtain clemency. Specifically, Coder emphasizes that the Army Clemency and Parole Board (ACPB) has reviewed his case "in absentia," and that the Judge Advocate General has failed to respond to his request for clemency under Article 74 of the Uniform Code of Military Justice.[3] Since it does not appear from the record that Coder had an opportunity to raise these claims in his previous § 2241 petition, the court declines to dismiss them under the abuse of the writ doctrine. Nonetheless, the court concludes that the claims are without merit.

"It is well-established that prisoners have no constitutional or fundamental right to clemency." Joubert v. Nebraska Bd. of Pardons, 87 F.3d 966, 968 (8th Cir. 1996); see also Army Reg. 15-130, § 1-1 (emphasizing that Army prisoners have "no constitutional, statutory, or

---

[3] The Army Clemency and Parole Board is the primary agency responsible for reviewing clemency cases for Army prisoners, including those housed in BOP facilities pursuant to the memorandum of agreement between the Department of the Army and the BOP. The policies, procedures, and functions of the ACPB are described in Army Regulation 15-130. The regulation lists criteria that may be considered in determining whether to grant a request for clemency, and describes the process by which clemency petitions are to be reviewed. For Army prisoners like Coder, who are subject to a term of confinement of 30 years or more, "clemency consideration will [occur] not later than 5 years from the date confinement began and at least annually thereafter." AR 15-130, § 3-1. The record reveals that Coder's most recent request for clemency was denied by the ACPB on March 19, 2009.

Another avenue of clemency relief available to Army prisoners is a petition for remission under Article 74 of the Uniform Code of Military Justice. Article 74 provides that the Judge Advocate General "may remit or suspend any part or amount of the unexecuted part of any sentence, including all uncollected forfeitures other than a sentence approved the President." 10 U.S.C. § 874.

regulatory right . . . to be granted clemency"). Consequently, Coder has "no constitutional right to a clemency hearing." Woratzeck v. Stewart, 118 F.3d 648, 653 (9th Cir. 1997); see also Milone v. Camp, 22 F.3d 693, 705 (7th Cir. 1994) (affirming the district court's decision that "there is no constitutional right to a clemency hearing"); Army Reg. 15-130, § 4-1 (emphasizing that clemency proceedings before the ACPB are nonadversarial and that individuals being considered for clemency are not authorized to personally appear before the Board). Likewise, given the absence of any protected interest in obtaining clemency, the failure to respond to a request for remission under Article 74 does not give rise to a due process violation or otherwise provide a valid basis for habeas corpus relief.[4] See Ward v. Province, 283 F. App'x 615, 617-618 (10th Cir. June 27, 2008) (rejecting the petitioner's claim that his procedural due process rights were violated when the state parole board failed to respond to his clemency request, since the board "has discretion to decide whether to consider an offender for clemency" and, thus, "there is no constitutionally protected liberty interest"); see also Gaddy v. Michael, 519 F.2d 669, 673-675 (4th Cir. 1975) (explaining that, to obtain habeas corpus relief, a petitioner must establish a violation of his constitutional or statutory rights and resulting prejudice).

---

[4] The court notes that the fact that Coder did not receive a response to his request for remission under Article 74 does not translate to a finding that his request was not considered by the Judge Advocate General. The Court of Criminal Appeals for the United States Navy-Marine Corps has held that a convening authority's failure to respond after being presented with a request for early release should be deemed a denial of the request. See, e.g., United States v. Bell, 60 M.J. 682, 687 (N.M. Ct. Crim. App. 2004) ("While it is in the best interests of military justice for the [convening authority] to respond to a request for early release, there is no legal requirement to do so. Accordingly, as applied to cases tried after the date of this decision, a [convening authority]'s failure to respond after being presented with a request will be deemed a denial."); United States v. Brones, 2009 CCA LEXIS 273, at *8 (N.M. Ct. Crim. App. July 31, 2009) (deeming the convening authority's failure to respond a denial of the request for clemency).

## Conclusion

For the reasons stated, the court will grant the respondent's motion to dismiss.[5] The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for the respondent.

ENTER: This 30th day of June, 2010.

/s/ _____
United States District Judge

---

[5] Having concluded that the petitioner is not entitled to habeas corpus relief, the court will deny his motion for default judgment and his request for an evidentiary hearing.